FIRST NAT. BANK OF NASHVILLE, TENN. *v.* BENNETT, RECEIVER.

[71 South. 169.]

ESTOPPEL. *Wrongful act. Loans to banks. Receivers.*

Where a bank took two deeds of trust on the same property on the same day but for different amounts, but recorded one of them in advance of the other to give it priority, and then transferred each of the trust deeds with other collateral to a different bank to secure its notes for borrowed money, without informing either of the banks of the existence of the other trust deed, and subsequently, the bank failed and each of the creditor banks applied the funds on deposit with it and the proceeds of the other collateral to the payment of the note held by it, and the bank which received the first deed of trust had its claim thereby satisfied in full and returned the first trust deed to the receiver of the insolvent bank who forclosed it. The note of the bank holding the junior trust deed not being satisfied by the funds on hand, it brought suit to have the balance of its debt satisfied out of the proceeds of the foreclosure sale made by the receiver. In such case while the constructive notice of the existence of the prior trust deed would have prevented the bank holding the second trust deed from enforcing it as against the other creditor bank, yet the failure of the insolvent bank to inform it of the existence of the other trust deed under the circumstances estopped it from claiming thereunder as against the second trust deed, and its receiver was likewise estopped from setting up any such claim.

APPEAL from the Chancery court of Tishomingo county. HON. J. Q. ROBINS, Chancellor.

Suit by the First National Bank of Nashville, Tennessee, against W. T. Bennett as receiver of the Tishomingo Banking Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Lamb & Warriner,* for appellant.

*H. Cassidy* and *W. L. Elledge,* for appellee.

POTTER, J., delivered the opinion of the court.

J. Carey Thompson owed the Tishomingo Banking Company a large sum of money, and to secure same executed two deeds of trust on the same property. The property was known as the Iuka Springs Hotel property. The two deeds of trust were executed, it seems, at the same time, one of them to secure six thousand, five hundred dollars and the other eight thousand, five hundred dollars. For some reason, we know not what, it was agreed between the creditor and the debtor that one of the mortgages should be a senior mortgage and one a junior mortgage. The senior mortgage was for the six thousand, five hundred dollar note, and the junior mortgage for the eight thousand, five hundred dollar note. The method of making one of the mortgages senior and one junior was by a private unrecorded agreement, and by having the senior mortgage filed first in the chancery clerk's office, and the junior mortgage later. There were only five minutes difference between the time of the filing of the two instruments; but this is not material to the controversy.

The Tishomingo Banking Company, after the execution of the notes and mortgages above mentioned, borrowed nine thousand dollars from the Union & Planters' Bank of Memphis, and sent its demand note for the nine thousand dollars, with the note above mentioned, secured by the senior mortgage and other collateral, as security; and it also borrowed nine thousand dollars from the First National Bank of Nashville on its demand note for said amount and secured the same by the junior mortgage on the same property, together with other collaterals. Neither the Nashville nor the Memphis bank knew anything of the deed of trust in favor of the other, except such constructive notice as was imported by the recordation of the instrument.

In a short time after the loans above mentioned were negotiated, the Tishomingo Banking Company failed, and

made a general assignment for the benefit of creditors; and the original assignee having resigned, W. T. Bennett was appointed receiver by the chancery court in which the matter was pending. The First National Bank of Nashville disposed of the collateral it held other than the eight thousand, five hundred dollars in question, and appropriated some cash it had on hand with·it at the time of the failure of the Tishomingo Banking Company, belonging to the insolvent bank, and after applying the proceeds of the sale of the collaterals above mentioned, and the cash on hand, there was still left due it a balance of two thousand, five hundred and sixty-three dollars and thirty-two cents, on the nine thousand dollar indebtedness, and it still held the eight thousand, five hundred dollar notes of J. Carey Thompson, secured by the junior mortgage.

The Union & Planters' Bank, which held the first mortgage, had on hand enough money of the Tishomingo Banking Company, at the time of the failure, to offset the nine thousand dollar demand note due it, and therefore appropriated enough of the funds of the failing bank in its hands to satisfy the indebtedness due it, and thereupon surrendered to the receiver of the Tishomingo Banking Company the six thousand, five hundred dollar note of J. Carey Thompson, secured by the senior mortgage and such other collateral as it held as security for the said nine thousand dollar note. Afterwards, Thompson having failed to meet the notes, both deeds of trust on the hotel property were foreclosed; but the property brought only four thousand one hundred dollars. The contest then arises between the First National Bank of Nashville, claiming that it should be paid the balance due it out of the four thousand, one hundred dollars by virtue of the deed of trust held by it for eight thousand, five hundred dollars as security, and the receiver of the Tishomingo Banking Company, claiming the proceeds of the sale by virtue of the prior mortgage for six thousand, five hundred dollars. The chancery court of Tishomingo

county decided in favor of the receiver and against the contention of the First National Bank of Nashville.

Great stress is laid in the ingenious brief of counsel on the dual relations of the receiver of an insolvent institution. For some purposes, it is contended that the receiver represents the bank; and for other purposes, he is the representative of the creditors. This court has recognized this dual relationship in so far as to permit, in some instances, the receiver to bring suits for the benefit of the creditors, that the insolvent institution itself could not have brought. In this case, the First National Bank of Nashville was under the impression that the deed of trust it was taking as collateral security was a first mortgage on the property it conveyed. While it is true the First National Bank of Nashville may have been charged with constructive notice of the existence of the six thousand, five hundred dollar mortgage held by the Union & Planters' Bank of Memphis, and as between it and the Memphis bank could not have maintained priority, yet, in so far as the Tishomingo Banking Company was concerned, it could not have set up in its own behalf that the deed of trust first recorded was a paramount lien, for, under the circumstances, it was the duty of the bank to have informed the First National Bank, before the loan was made, of the existence of the first mortgage.

The note of the Tishomingo Banking Company held by the Union & Planters' Bank of Memphis was paid and discharged by the application of funds on deposit in that bank belonging to the Tishomingo Banking Company, sufficient to pay the indebtedness of nine thousand dollars, and the indebtedness discharged, the six thousand, five hundred dollar note in question and the first deed of trust again became part of the estate of the Tishomingo Banking Company. The bank itself would have been estopped from denying that the lien of the First National Bank of Nashville was a first lien, and its re-

ceiver is likewise estopped from setting up any such claim.

It would be just as logical to hold that the Union & Planters' Bank of Memphis could not appropriate the funds on deposit there to the liquidation of the indebtedness due it on the ground that the deposits, on the failure of the bank, became the property of the receiver as trustee for the creditors, as it would be to hold that the receiver, as trustee for the creditors, could hold the senior mortgage in question against the First National Bank of Nashville, which held the second mortgage.

The case is therefore reversed and remanded.

*Reversed and remanded.*